Anna Y. Park, CA SBN 164242
Nakkisa Akhavan, CA SBN 286260
Natalie Nardecchia, CA SBN 246486
Ella Hushagen, CA SBN 297990
Chanmealea Thou, CA SBN 326469
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone:  (213) 785-3083
Facsimile:  (213) 894-1301
E-Mail:  lado.legal@eeoc.gov

Eric Yau, HI SBN 10087
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
300 Ala Moana Boulevard, Room 4-257
Honolulu, HI 96850
Telephone: (808) 800-2345
Facsimile: (808) 541-3390
E-mail: eric.yau@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br>v.<br><br>ORI ANUENUE HALE, INC.; OPPORTUNITIES AND RESOURCES, INC., and Does 1-5 Inclusive,<br><br>Defendant(s). | Case No.: CV-21-00286-JMS-RT<br><br>**PLAINTIFF EEOC'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Honorable J. Michael Seabright<br>**Date: TBD**<br>**Time: TBD**<br>**Trial Date: February 13, 2024** |

TO THE HONORABLE DISTRICT COURT JUDGE, DEFENDANTS, AND ALL ATTORNEYS OF RECORD:

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") submits the following Memorandum of Points and Authorities in support of its Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(c), as to its denial of reasonable accommodations claim against Defendants ORI Anuenue Hale, Inc. and Opportunities and Resources, Inc. ("Defendants" or "ORI") in the EEOC's Complaint. The EEOC moves this Court to grant summary judgment against Defendants in EEOC's favor on its claim that Defendants discriminated against a class of Deaf employees by denying them sign language interpreters as a reasonable accommodation, in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA").

As demonstrated herein, there is no genuine issue of material fact as to the following: (1) Defendants failed to engage in the interactive process and failed to reasonably accommodate Deaf employees, and (2) Defendants refused to provide a reasonable accommodation to Deaf employees, as required by the ADA. This Motion is based on the pleadings and papers on file herein; the attached memorandum of points and authorities; the supporting exhibits; and the separate concise statement, pursuant to the Local Rules of Practice for the United States

District Court for the District of Hawaii ("LR"), Rule 56.1, submitted herewith;

and any argument the Court may allow.

**CONFERENCE REQUIREMENT UNDER LR 7.8**

This motion is made following the conference of counsel pursuant to LR 7.8

which took place on July 31, 2023.


Respectfully Submitted,

Dated: September 5, 2023        /s/ *Eric Yau*
                               Eric Yau
                               Trial Attorney

                               U.S. EQUAL EMPLOYMENT
                               OPPORTUNITY COMMISSION

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...........................................................................vi

**I. INTRODUCTION** ......................................................................................1

**II. STATEMENT OF FACTS**.........................................................................3

A. Defendants Impose a "Bring Your Own" Reasonable Accommodation
Policy. ............................................................................................................3

B. Defendants Knew the Deaf Employees Communicated Through ASL From the
Time of Hire. ..................................................................................................3

C. Defendants Require All Janitors to Attend Safety Meetings. ........................5

D. Defendants Knew Their Deaf Employees Needed Reasonable Accommodations
to Understand and Participate in Meetings..............................................5

E. Defendants Did Not Engage in the Interactive Process with the Deaf
Employees to Determine How to Accommodate Them.......................................7

F. Defendants Refused to Provide Effective Available Accommodations at
Mandatory Safety Meetings..........................................................................8

**III. LEGAL STANDARD**...............................................................................10

A. Summary Judgment is Proper Against Defendants if There is No Genuine
Issue as to Any Material Fact. ......................................................................10

B. The ADA Requires Employers to Engage in the Interactive Process and
Provide Reasonable Accommodations to Disabled Employees........................11

**IV. LEGAL ARGUMENT** ..............................................................................13

A. The Undisputed Facts Demonstrate Defendants Failed to Engage in the
Good-Faith Interactive Process.......................................................................14

    1. Defendants Knew the Deaf Employees Required Reasonable
       Accommodations Since At Least 2015...................................................14

    2. Defendants Did Not Engage in a Good-Faith Interactive
       Process with the Deaf Employees..........................................................16

B. Defendants Refused to Effectively and Reasonably Accommodate the Deaf
Employees at Mandatory Meetings. ...............................................................19

    1. Defendants' "Bring Your Own" Accommodation Policy
       Violates the ADA. .................................................................................19

    2. Defendants Refused to Provide Effective and Available

Accommodations for Deaf Employees. ...................................................21

3.  Deaf Employees' Participation at Mandatory Meetings Is
a Benefit and Privilege of Employment....................................................25

**V. CONCLUSION**................................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................11

*Barnett v. U.S. Air, Inc.*,
  228 F.3d 1105 (9th Cir. 2000), *vacated on other grounds sub nom.*
  *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)............................12, 17, 18, 25

*Beasley v. O'Reilly Auto Parts*,
  69 F.4th 744 (11th Cir. 2023) ..........................................................................26

*Beck v. Univ. of Wisconsin Bd. Of Regents*,
  75 F.3d 1130 (7th Cir. 1996) ...........................................................................12

*Campbell v. Wal-Mart Stores, Inc.*,
  272 F. Supp. 2d 1276 (N.D. Okla. 2003)..........................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317,322 (1986)..................................................................................11

*Dunlap v. Liberty Natural Products, Inc.*,
  878 F.3d 794 (9th Cir. 2017) ...........................................................................12

*Humphrey v. Memorial Hospitals Ass'n*,
  239 F.3d 1128 (9th Cir. 2001) ...................................................................*passim*

*Lenkiewicz v. Castro*,
  146 F. Supp. 3d 46 (D.D.C. 2015)....................................................................18

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir. 2000) .........................................................................11

*Noll v. Int'l Bus. Machines Corp.*,
  787 F.3d 89 (2d Cir. 2015) ..............................................................................23

*Norris v. Allied–Sysco Food Serv.*,
  948 F.Supp. 1418 (N.D.Cal.1996), *aff'd* 191 F.3d 1043 (9th
  Cir.1999) ...................................................................................................15, 17

*Scott v. Harris*,
550 U.S. 372 (2007)...................................................................................11

*Searls v. Johns Hopkins Hospital*,
158 F.Supp.3d 427 (D. Maryland 2016)....................................................23

*Snapp v. United Transportation Union*,
889 F.3d 1088 (9th Cir. 2018) .............................................................*passim*

*U.S. Airways, Inc. v. Barnett*,
535 U.S. 391 (2002)..............................................................................13, 21

*U.S. E.E.O.C. v. Creative Networks, LLC*,
912 F.Supp.2d 828 (D. Ariz. 2012) ..........................................................27

*U.S. E.E.O.C. v. Dolgencorp, LLC*,
899 F.3d 428 (6th Cir. 2018) ..............................................................18, 25

*U.S. E.E.O.C. v. Fed. Express Corp.*,
513 F.3d 360 (4th Cir. 2008) ....................................................................26

*U.S. EEOC v. Placer ARC*,
114 F. Supp.3d 1048 (E.D. Cal. 2015) ......................................................23

*U.S. EEOC v. UPS Supply Chain Solutions*,
620 F.3d 1103 (9th Cir. 2010) .......................................................22, 23, 25

*Wilkerson v. Grinnell Corp.*,
270 F.3d 1314 (11th Cir. 2001) .................................................................16

*Zivkovic v. S. Cal. Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) .......................................................12, 20, 21

**Statutes**

42 U.S.C. § 12102(1)(A)............................................................................23

42 U.S.C. § 12112(a) ................................................................................12

**Other Authorities**

29 C.F.R. §1630.2(o)(1)(iii).......................................................................13

29 C.F.R. §§ 1910.1200(b)(1) & 1910.1200(h)(1) ...............................5, 25

Fed. R. Civ. P. 56(a) and (c) ....................................................................11

EEOC Guidance: Hearing Disabilities in the Workplace and the
    Americans with Disabilities Act (January 24, 2023)..........................................24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The U.S. Equal Employment Opportunity Commission ("EEOC") seeks summary judgment against Opportunities & Resources, Inc. and ORI Anuenue Hale, Inc. (collectively "Defendants") because Defendants violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") by: 1) failing to engage in the required interactive process with ten (10) Deaf employees to determine whether a reasonable accommodation could be provided, and 2) refusing to provide effective reasonable accommodations at mandatory meetings, which deprived the Deaf employees of benefits and privileges of employment.

Defendants hired ten (10) Deaf employees to work as janitors at military facilities. It is undisputed that Defendants knew the ten (10) Deaf employees had hearing disabilities at the time they hired them, and that most used American Sign Language ("ASL") as their primary form of communication.

Defendants required all janitorial employees, including the Deaf employees, to attend regular, mandatory meetings to review critical workplace safety information—like, electrical and chemical safety, workplace violence, and proper equipment use. The undisputed facts show Defendants failed to provide reasonable accommodations to allow the Deaf employees to understand and participate in the

meetings, despite the Deaf employees' repeated requests for effective reasonable accommodations at safety meetings.

Defendants adhered to a "Bring Your Own" accommodation policy, mandated by Defendants' President and CEO, Susanna Cheung ("Cheung"). Cheung asserts that employees with disabilities need to provide their own accommodation if they want to work for Defendants. Defendants contend that Deaf janitors, tasked with cleaning bathrooms, do not need ASL interpreters because "toilets don't talk."

The undisputed facts demonstrate that Defendants never engaged in the interactive process with their Deaf employees. Instead, they unilaterally decided that passing handwritten English notes to the Deaf employees during meetings was adequate. The notes captured only snippets of information; they did not allow Deaf employees to meaningfully understand and participate. The Deaf employees are not proficient in English. Defendants never asked the Deaf employees whether they were able to understand and participate in the meetings via note-writing.

The EEOC brought this civil rights enforcement action to vindicate the rights of Defendants' Deaf employees. ECF No. 1 (Compl.). Summary judgment should be granted for the EEOC, finding Defendants violated the ADA as a matter of law because there are no genuine issues of material fact as to Defendants' (1) failure to engage in the good-faith interactive process, and (2) refusal to provide Deaf employees effective reasonable accommodations at mandatory safety meetings.

## II.    STATEMENT OF FACTS

### A.    Defendants Impose a "Bring Your Own" Reasonable Accommodation Policy.

Defendants are nonprofit organizations that receive government funding to provide residential, educational, and vocational services to people with disabilities. Defendants will receive approximately $12 million in 2023 through their contract with the Naval Facilities Engineering Systems Command (NAVFAC) to clean military facilities. (Concise Statement of Facts ("CSF"), ¶1)

Despite Defendants' mission to serve people with disabilities, Defendants have a "Bring Your Own" reasonable accommodation policy for employees. It is undisputed that Defendants' founder, President and CEO, Susanna Cheung, sets policy and is the ultimate decision-maker about company matters. (CSF, ¶3). Cheung determines whether to provide reasonable accommodations, including ASL interpreters. (CSF, ¶25). According to Cheung, Defendants "cannot provide accommodation. If you want to work, you provide your own." Ex. 10 (Cheung Dep.) at 41:14-16. Defendants admit their Human Resources Managers have not received any training regarding the ADA or reasonable accommodations, nor do Defendants provide such training to employees. (CSF, ¶¶4-5).

### B.    Defendants Knew the Deaf Employees Communicated Through ASL From the Time of Hire.

It is undisputed Defendants hired ten (10) Deaf individuals as janitors to clean

-3-

military facilities.[1] ECF No. 145 (Joint Stipulation ("Joint Stip."), ¶¶3, 5; ECF No. 1 (Compl.), ¶¶22, 25, 28, 31, 45; ECF No. 9 (Answer) ¶ 3. The Deaf employees' job duties include cleaning, sweeping, mopping, and waxing facility bathrooms and offices. ECF No. 1 (Compl.), ¶¶21, 24, 27, 30, 33; ECF No. 9 (Answer) ¶3. It is undisputed that: 1) the Deaf employees are qualified individuals with disabilities under the ADA who successfully perform their duties with or without accommodations; and 2) Defendants knew about the Deaf employees' disabilities from hire. ECF No. 145 (Joint Stip.), ¶¶2-6.

The undisputed facts show Defendants knew that at least nine (9) of the ten (10) Deaf employees communicated via ASL from the time they were hired. (CSF, ¶¶7-10). Defendants admit they did not provide ASL interpreters for the Deaf employees' job interviews. (*Id*., ¶6). Eulalia Pelep ("Pelep"), Ryan Manzano, and Aaron Cutler all requested ASL interpreters for their interviews. (*Id*., ¶¶8-10). Defendants refused, telling them they could bring their own interpreter or write to communicate. Pelep, Rey Corpuz, Carlina Acojido, Jyra Secretaria, Myer Alokoa, Sokunthea Prak ("Prak"), and Joyce Richard-White brought individuals who can

---

[1]     Defendants stipulate that they are joint employers for purposes of liability, and therefore, finding liability as to one results in liability as to both. *See* ECF Nos. 128 & 145, ¶1.

sign to assist them during their job interviews. (*Id.*, ¶7). Interview notes for six (6) of the Deaf employees indicate that they communicate via sign language. (*Id.*, ¶11).

## C.     Defendants Require All Janitors to Attend Safety Meetings.

It is undisputed that Defendants require all employees, including the Deaf employees, to attend safety meetings. (CSF, ¶12). Defendants' military contracts and workplace safety regulations require Defendants to provide safety trainings. (*Id.*, ¶13); *see also* 29 C.F.R. §§ 1910.1200(b)(1) & 1910.1200(h)(1) (requiring all employers to provide employees information and training about the hazardous chemicals to which they are exposed, including the flammability and carcinogenicity of particular chemicals, safety measures employees can take). The meetings cover hazardous chemical, electrical, and equipment safety. (CSF, ¶16).

Defendants hold mandatory all-staff meetings, lasting one to two hours, every few months at Defendants' Wahiawa office or at Pearl Harbor and Hickam. They hold monthly on-site meetings at Hickam and Pearl Harbor, which last 30 minutes to an hour. (CSF, ¶¶14-15); ECF No. 1 (Compl.), ¶37(e); ECF No. 9 (Answer), ¶16. Defendants supply all employees with written training materials, videos, and demonstrations to accompany the verbal presentation. (*Id.*, ¶17).

## D.     Defendants Knew Their Deaf Employees Needed Reasonable
##         Accommodations to Understand and Participate in Meetings.

The undisputed facts show Defendants knew their Deaf employees needed reasonable accommodations to understand and participate in mandatory meetings.

First, Defendants had constructive notice that the Deaf employees communicated via ASL: they knew they employed ten (10) workers with hearing disabilities, and at least nine (9) either requested ASL for their job interviews or communicated via ASL with Human Resources at the time of their hire. (CSF, ¶¶7-11).

Second, the undisputed evidence demonstrates Defendants had actual notice the Deaf employees required reasonable accommodations to understand and participate in meetings no later than February 2017. Defendants contacted Ronald Renshaw ("Renshaw"), at the Hawaiʻi Division of Vocational Rehabilitation ("DVR"), to request that the agency supply ASL interpreters for a safety meeting with Deaf employees on or around February 9, 2017. (CSF, ¶18). DVR provides services to help disabled workers obtain employment and stay employed; it is not an interpretation service. Ex. 27 (Renshaw Decl.), ¶3. Renshaw provided Defendants with phone numbers to arrange interpreters.[2] *Id*., ¶4.

Third, Deaf employees requested in 2018 that Defendants provide ASL interpreters at meetings. It is undisputed that Prak requested an interpreter for a safety meeting scheduled for July 20, 2018. (CSF, ¶19). In November 2018, five (5) of Defendants' Deaf employees—Pelep, Secretaria, Richard-White, Alokoa, and

---

[2]    Defendants have not provided any information about the safety meeting on February 10, 2017 in discovery responses. (*See*, *generally*, Ex. 15 (ORI's Supplemental Interrogatory Responses)). The evidence does not show whether Defendants arranged an ASL interpreter for it, or not.

Prak (collectively, "Charging Parties")—filed charges of discrimination with the EEOC complaining about Defendants' failure to provide reasonable accommodations. Ex. 29 (Charges of Discrimination). The Charges notified Defendants that the Charging Parties needed reasonable accommodations. (CSF, ¶20). The undisputed facts show that—although Defendants knew the Deaf employees requested effective accommodations—they did not arrange ASL interpretation until November 2022. (CSF, ¶30).

### E. Defendants Did Not Engage in the Interactive Process with the Deaf Employees to Determine How to Accommodate Them.

Although Defendants were on notice from the time they hired the Deaf employees that they required reasonable accommodations, the undisputed facts show Defendants did not engage the Deaf employees to ask about their needs and explore possible accommodations. (CSF, ¶21) Even after Defendants received the charges of discrimination, Defendants admit they did not meet with the Charging Parties to discuss their concerns about the lack of effective accommodations at safety meetings, nor explore potential accommodations, such as live ASL interpretation or video relay interpretation ("VRI"). (*Id.*, ¶22). After receiving the Charges of Discrimination, Defendants wrote English notes to the Charging Parties seeking confirmation that they had no concerns about work and asking why they complained to the EEOC. (*Id.*, ¶24).

### F.   Defendants Refused to Provide Effective Available Accommodations At Mandatory Safety Meetings.

From 2016 until November 2022, Defendants refused to provide ASL interpretation at mandatory meetings. Cheung, Defendants' President and CEO—responsible for making policy and key decisions—asserts that Defendants do not need to provide ASL interpreters for the Deaf janitorial employees because "toilets don't talk." (CSF, ¶26). Cheung contends ASL interpreters are not necessary because Deaf employees could opt to purchase hearing aids, which she erroneously believes could restore their hearing (lost since birth or childhood) and allow them to understand spoken language. (*Id.*, ¶27). In short, she thinks the Deaf employees could provide their own accommodation. Defendants believe that the Deaf employees have suffered no discrimination because Defendants hired them. (*Id.*, ¶28). Indeed, they think the Deaf employees are lucky to be employed despite their hearing disabilities. (*Id.*, ¶29). Cheung testified:

> Q. Is it your position that by giving deaf workers a job[,]
> that's doing a service for them? …
> Witness: Yes … I should kiss their foot?

Ex. 10 (Cheung Dep.) at 93:3-9.

Instead of ASL, Defendants provided handwritten English notes to the Deaf employees during the safety meetings. (CSF, ¶33). Different individuals, with no special training in transcription, wrote notes during the presentation, sometimes for more than one Deaf employee at a time. (*Id.*, ¶34). Defendants admit the notes are

"not word for word," capturing only the selective summaries of the hearing note-writer. (*Id.*, ¶35); Ex. 1 (30(b)(6)-Siaosi Dep. (Jan. 9, 2023)) at 70:15-21. Deaf employee Prak explained: "They would talk for a long period of time and give me a short description, just a very quick one-liner…I would get a little short fragment[.]…That's not informative." Ex. 11 (Prak Dep.) at 81:9-18.

Defendants assumed handwritten English notes provided a reasonable accommodation for the Deaf employees. (CSF, ¶36). Human Resources Manager Rose Fok testified that supervisors asked the Deaf employees, in writing, if they had questions about the notes, and since "none of them said yes or no[,] I assume they understood." Ex. 9 (R. Fok Dep. (May 25, 2023)) at 150:23-151:1. It is undisputed Defendants never asked the Deaf employees through an interpreter whether handwritten notes met their needs, nor took any steps to determine whether the Deaf employees wrote and read English. (CSF, ¶¶21-23).

Defendants provide written training materials, videos and demonstrations to all employees during safety meetings—they are not accommodations for the Deaf employees. (CSF, ¶17). Defendants' videos do not include subtitles or closed captioning. (*Id.*, ¶37). Defendants' handouts, alone without further explanation, are not self-explanatory. (*Id.*, ¶38). The EEOC's expert, Dr. Shana Williams, determined that the Charging Parties read English at or below a second-grade level, while Defendants' training materials are written at a seventh- or eighth-grade level. (*Id.*,

¶39-41). Dr. Williams found that four (4) of the Charging Parties did not understand the words "hazardous," "chemical" and "flammable" from Defendants' training materials. (*Id.*, ¶40).

It is undisputed that the handwritten notes did not enable the Deaf employees' full participation in meetings. According to Prak:

> We all sat there just twiddling our thumbs because we didn't know what was going on without an interpreter… [T]he meetings would go on and on and on. [The Deaf employees] would just look at each other[.]…How are we supposed to participate? **They think we're stupid, but we're not.** I need to know what they're saying. **I need to know about these things in the workplace.** Why am I sitting over here, standing around, twiddling my thumbs, not participating in the meeting? Who's going to help me understand that? I could see that there's nobody there to help us.

Ex. 11 (Prak Dep.) at 74:9-75:11 (emphasis added). Defendants' Deaf employees could not readily pose questions, engage in discussion, or offer ideas. (CSF, ¶42). In short, the Defendants' handwritten snippets in English did not effectively accommodate the Deaf employees.

## III.   <u>LEGAL STANDARD</u>

### A.   **Summary Judgment is Proper Against Defendants if There is No Genuine Issue as to Any Material Fact.**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317,322 (1986). The moving party "has both the initial burden of production and the ultimate burden of persuasion[.]" *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). If the movant has carried its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue for trial. *Id.* at 1103. The nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotations omitted).

The nonmoving party cannot rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 322.

**B.    The ADA Requires Employers to Engage in the Interactive Process and Provide Reasonable Accommodations to Disabled Employees.**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to…job training[ ] and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). When an employer becomes aware of the need for accommodation, the employer must engage in the interactive process with the employee to identify and implement appropriate reasonable accommodations. *Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001) (internal citation omitted); *Dunlap v. Liberty Natural Products, Inc.,* 878 F.3d 794, 798 (9th Cir. 2017).

"The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted). "[T]he interactive process is a mandatory rather than a permissive obligation on the part of employers under the ADA[.]" *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002).

"A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Barnett*, 228 F.3d at 1115 (citing *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). "Recognizing the importance

of the interactive process, the Ninth Circuit [has] held that if an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation." *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citations omitted).

The ADA "says that discrimination includes an employer's *not making reasonable accommodations* to the known physical or mental limitations of an otherwise qualified employee, *unless* the employer can demonstrate that the accommodation would impose an *undue hardship* on the operation of its business." *U.S. Airways, Inc. v. Barnett,* 535 U.S. 391, 396 (2002) (emphasis in original) (alterations and quotations omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)). A "reasonable accommodation" includes "modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. §1630.2(o)(1)(iii); *see also, Barnett*, 535 U.S. at 397 (requiring "the *same* workplace opportunities that those without disabilities automatically enjoy") (emphasis in original).

## IV.   <u>LEGAL ARGUMENT</u>

The Parties stipulated that: (1) the Deaf employees have a disability as defined by the ADA; (2) Defendants knew that the Deaf employees had disabilities; and, (3)

the Deaf employees are qualified for and satisfactorily perform the essential functions of their janitorial positions. *See* ECF No. 145 (Joint Stip.), ¶¶2-6. The Parties further stipulated that Defendants waived the affirmative defense of undue hardship as to the lack of ASL interpretation at mandatory all-staff meetings, typically held every few months, and monthly on-site staff meetings. *Id.*, ¶7. Accordingly, the only issue here is whether Defendants discriminated against the Deaf employees by failing to engage in the interactive process and refusing to provide effective reasonable accommodations.

Summary Judgment in favor of the EEOC is warranted because: 1) Defendants have been on notice about the Deaf employees' need for reasonable accommodations since they were hired yet Defendants never engaged in a good faith interactive process; and 2) Defendants refused to provide effective reasonable accommodations at mandatory safety meetings, consistent with their "Bring Your Own" accommodation policy. (CSF, ¶2). The EEOC is entitled to summary judgment that Defendants violated the ADA as a matter of law. *See Humphrey*, 239 F.3d at 1138-39; *Snapp,* 889 F.3d at 1095.

### A. The Undisputed Facts Demonstrate Defendants Failed to Engage in the Good-Faith Interactive Process.

#### 1. Defendants Knew the Deaf Employees Required Reasonable Accommodations Since At Least 2015.

Defendants' knowledge that the Deaf employees used sign language interpretation to communicate with hearing people, ask and answer questions at job interviews, and complete English language employment forms was effective notice that they require reasonable accommodations at mandatory meetings. Defendants knew the ten (10) Deaf employees had hearing disabilities, and that at least nine (9) Deaf employees communicated via ASL from the time of their hire. ECF No. 145 (Joint Stip.), ¶6; (CSF, ¶¶7-10) (three (3) Deaf employees requested ASL interpretation for their job interviews; seven (7) brought someone who could sign to assist them at the interview). Defendants noted that six (6) Deaf applicants used sign language to communicate at the job interview. (CSF, ¶11).

"[I]f an employee's disability and the need to accommodate it are obvious, an employee is not required to expressly request reasonable accommodation." *Norris v. Allied–Sysco Food Serv.,* 948 F.Supp. 1418, 1436 (N.D.Cal.1996), *aff'd* 191 F.3d 1043 (9th Cir.1999); *see*, *e.g.*, *Campbell v. Wal-Mart Stores, Inc.*, 272 F. Supp. 2d 1276, 1289 (N.D. Okla. 2003) (Deaf and blind employee's disabilities were obvious and known to employer, suggesting she did not need to request accommodation to trigger employer's duty to accommodate).

The undisputed facts show Defendants had actual notice that the Deaf employees needed ASL interpretation at meetings from at least February 2017. On February 9, 2017, Defendants contacted Ronald Renshaw at DVR to request two

ASL interpreters for Deaf employees at an upcoming meeting. (CSF, ¶18); Ex. 27 (Renshaw Decl.), ¶5 and Ex. A. DVR is not an interpreter service. *Id.*, ¶3. Instead of arranging and paying for ASL interpretation, Defendants asked a government agency to provide the reasonable accommodation they owed their Deaf employees.[3] *Id.*, ¶5 and Ex. A.

It is undisputed that in July 2018, Prak requested a sign interpreter for a safety meeting. (CSF, ¶19). In November 2018, five (5) Deaf employees filed Charges of Discrimination asserting they required effective reasonable accommodations. Ex. 29 (Charges of Discrimination). The EEOC Charges alerted Defendants about their failure to effectively accommodate the Deaf Charging Parties. (CSF, ¶20); *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1319 (11th Cir. 2001) (EEOC charge "serve[s] two significant functions: notice to the employer and initiation of an EEOC investigation.").

## 2. Defendants Did Not Engage in a Good-Faith Interactive Process with the Deaf Employees.

Defendants failed to engage in the interactive process with the Deaf employees at any point in time. From the time of hire, Defendants knew their Deaf

---

[3]   The evidence to date does not show whether Defendants arranged for ASL interpretation at the February 10, 2017 meeting. *See*, *generally*, Ex. 15 (ORI's Supplemental Interrogatory Responses). It is doubtful they secured an interpreter given that they attempted to arrange one the day prior to the meeting.

employees had hearing disabilities and communicated through ASL. (CSF, ¶¶7-11). Defendants had a duty to initiate the interactive process with the Deaf employees based on their obvious disabilities and use of ASL to communicate. *See Norris*, 948 F.Supp. at 1436; *Barnett*, 228 F.3d at 1114. Instead, Defendants assumed, without engaging in the interactive process, that providing handwritten English notes to the Deaf employees during the meetings would suffice. (CSF, ¶¶21, 36). Defendants admit they did not ask the Deaf employees whether notes were effective, nor assess whether they could read and write English proficiently enough to understand the information in the notes and training materials. (*Id*., ¶¶ 21, 23 & 36).

Even if, *arguendo*, Defendants had no affirmative duty to initiate the interactive process when they hired the Deaf employees, the 2018 requests for accommodation triggered Defendants' duty. "[T]he duty to accommodate is a continuing duty that is not exhausted by one effort." *Humphrey,* 239 F.3d at 1138. Here, Defendants admit that Prak requested interpretation in July 2018. (CSF, ¶19). They admit the Charges alerted them that the Charging Parties were seeking effective reasonable accommodations. (*Id*., ¶20). It is undisputed Defendants did not meet with the Charging Parties to discuss their concerns and explore potential accommodations. (*Id*., ¶22-23). Defendants continued communicating with the Deaf employees in writing despite clear notice the Deaf employees were seeking a more effective accommodation. (*Id*., ¶¶24, 36).

It is undisputed that Defendants failed to initiate the interactive process, either upon hire when they learned about their Deaf employees' hearing disabilities, or in 2018 when the Charging Parties complained. The undisputed facts show Defendants knew Deaf employees sought effective reasonable accommodations for meetings—beyond the purported accommodations Defendants offered—yet they took no steps to assess the Deaf employees' needs and explore workable accommodations. (CSF, ¶¶21-23); *see Barnett*, 228 F.3d at 1117 (employer failed to engage in the interactive process where it rejected employee's proposed accommodation and did not attempt dialogue with him); *Humphrey*, 239 F.3d at 1138-39 (employer's rejection of plaintiff's proposed accommodations  without suggesting alternatives or exploring other accommodations violated interactive process duty); *U.S. E.E.O.C. v. Dolgencorp, LLC*, 899 F.3d 428, 434 (6th Cir. 2018) (employer failed to engage in interactive process where manager categorically denied worker's request and did not explore alternatives).

Here, Defendants failed to engage in the interactive process in good faith as a matter of law. *See*, *e.g.*, *Humphrey*, 239 F.3d at 1139; *Lenkiewicz v. Castro*, 146 F. Supp. 3d 46, 55 (D.D.C. 2015) (employer failed to engage in good-faith interactive process as a matter of law where it ignored employee's communications and "flatly denied" her request without seeking any additional information). At summary judgment, where an employer failed to engage in a good-faith interactive process,

the burden shifts to the employer to prove the unavailability of a reasonable accommodation. *Snapp*, 889 F.3d at 1095 (9th Cir. 2018). Defendants cannot meet their burden of proof as reasonable accommodations for the Deaf employees at meetings were available, including the accommodation they sought, ASL interpretation. *Infra*, §B. Consistent with Defendants' "Bring Your Own" accommodation policy, they simply refused to provide effective available accommodations.

### B. Defendants Refused to Effectively and Reasonably Accommodate the Deaf Employees at Mandatory Meetings.

#### 1. Defendants' "Bring Your Own" Accommodation Policy Violates the ADA.

It is undisputed Susanna Cheung—Defendants' President and CEO—makes decisions and sets policy for Defendants. (CSF, ¶3). Cheung testified: "I cannot provide accommodation. If you want to work, you provide your own." (CSF, ¶2); Ex. 10 (Cheung Dep.), 41:14-16. Defendants only employ "healthy people," and "if you have a disability and you want to be employed, you need to bring your own accommodation." Ex. 16 (Summary of ORI's position) at ORI-996, ¶10. Cheung believes ASL interpreters for Deaf janitors are superfluous because "toilets don't talk." (CSF, ¶26). Cheung erroneously contends the Deaf employees could simply obtain hearing aids, which would enable them to hear and obviate the need for interpreters. (*Id.*, ¶27).

Defendants' "Bring Your Own" accommodation policy fundamentally undercuts the ADA, which places the duty to explore and provide accommodations on the employer—not the employee. *Zivkovic*, 302 F.3d at 1089; *Snapp*, 889 F.3d at 1097 ("To put the entire burden for finding a reasonable accommodation on the disabled employee or, effectively, to exempt the employer from the process of identifying reasonable accommodations, conflicts with the goals of the ADA."). Defendants' failure to comply with the ADA is particularly egregious given they receive government funding and contracts—in the millions of dollars annually (CSF, ¶1)—to provide services to people with disabilities. Defendants admit that they have undertaken no training for their Human Resources, management, or staff regarding disability discrimination and reasonable accommodation. (*Id.*, ¶¶4-5). Defendants' CEO and their high-level managers have ignored their obligations as employers under the ADA, instead arguing their services for people with intellectual disabilities exculpate them from such responsibilities as employers.

Defendants take the position that the EEOC's civil rights enforcement action to bring Defendants into ADA compliance threatens their services for individuals with disabilities. Ex. 14 (DeLuna Dep.) at 205:8-21; Ex. 17 (Main Points for EEOC Lawsuit (Deaf Employees) Against ORI) at ORI-986-987. Cheung testified Defendants would not pay one penny to compensate the Deaf employees for Defendants' ADA violations because the budget is for their intellectually disabled

clients. Ex. 10 (Cheung Dep.) at 60:6-9, 62:22-63:3, 104:23-105:2. Setting aside whether paying damages to the Deaf employees would, in fact, jeopardize Defendants' programs (which is not at issue in this Motion), Defendants' insistence on pitting one group of people with disabilities (Deaf employees) against another group (individuals with intellectual disabilities) is contrary to the ADA. Defendants' policy that workers must bring their own accommodation to work is damaging to all disabled workers.

### 2.     Defendants Refused to Provide Effective and Available Accommodations for Deaf Employees.

Consistent with Defendants' "Bring Your Own" accommodation policy and Cheung's belief that interpreters are unnecessary because "toilets don't talk," Defendants refused to provide effective reasonable accommodations to Deaf employees. *See Barnett*, 535 U.S. at 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a disabled individual's limitations.") (emphasis in original); *Humphrey,* 239 F.3d at 1137 (ineffective modifications are not reasonable accommodations); *Zivkovic*, 302 F.3d at 1089 (employer must offer accommodation that is "reasonable and effective"). In lieu of engaging in the interactive process to explore potential accommodations for the Deaf employees, Defendants unilaterally determined they would provide incomplete English notes relating some of the information presented at mandatory meetings. (CSF, ¶¶21-23, 33).

There is no genuine factual dispute that the notes failed to provide an effective reasonable accommodation for the Deaf employees. The notes only consist of meeting information that *the supervisors considered to be important*. (CSF, ¶¶34-35). They are mere "quick one-liner[s]" and "fragment[s]." Ex. 11 (Prak Dep.) at 81:9-18. Secretaria responded to a note from her manager asking her whether she understood, "Sometime little few understand." Ex. 20 (Defendants' handwritten notes) at ORI-400. The Deaf employees could not readily pose questions, engage in the discussions between employees and management, or offer ideas. (CSF, ¶42); *see U.S. EEOC v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1111-12 (9th Cir. 2010) (reasonable to find employer's cursory, incomplete notes for Deaf employee during meetings were ineffective where they did not describe questions and answers nor afford him the opportunity to share ideas).

Defendants' written training materials and videos—which they provide all employees—do not cure the defects of the notes. (CSF, ¶17). The videos do not include subtitles or closed captioning. (*Id.*, ¶37). The training handouts are not self-explanatory even to Defendants' Human Resources Manager, Rose Fok, who speaks English. (CSF, ¶38); *see* Ex. 9 (R. Fok Dep. (May 25, 2023)) at 158:6-9, 159:3-25 (Fok could not explain acronym nor decipher the meaning of slides regarding electric shock risk); Ex. 19 (Oct. 25, 2019 materials) at ORI-514, 523, 525-26. The EEOC's expert, Dr. Williams, tested the Charging Parties' English proficiency, and

determined they read English at or below a second-grade level, while Defendants'
training materials are written at a seventh- to eighth-grade level. (CSF, ¶¶39, 41).
Dr. Williams found that four (4) of the Charging Parties did not understand the words
"hazardous," "chemical" and "flammable" in Defendants' training materials. (*Id*.,
¶40).

The undisputed facts show Defendants were on notice that the purported
accommodation they offered—handwritten notes during meetings—was ineffective
no later than 2018. (CSF, ¶20); *see UPS Supply Chain Solutions*, 620 F. 3d at 1112
(reasonable to find employer was aware that handwritten notes during meetings were
ineffective where Deaf employee requested ASL interpreter instead). Yet the
undisputed facts show Defendants continued to provide handwritten notes. (CSF,
¶¶22-24). They made no effort to evaluate the effectiveness of the notes, nor assess
the Charging Parties' English proficiency to evaluate the effectiveness of the
accommodation. (*Id*., ¶¶22-23). They did not meet with the Charging Parties to ask
about their request for effective accommodations and explore options, such as live
ASL interpretation or VRI. (*Id*., ¶22).

ASL interpretation is a well-recognized reasonable accommodation for
employees with hearing disabilities, and the undisputed evidence shows it was
available here. *See* 42 U.S.C. § 12102(1)(A) ("The term 'auxiliary aids and services'
includes…qualified interpreters[.]"); *U.S. EEOC v. Placer ARC,* 114 F. Supp.3d

-23-

1048, 1058 (E.D. Cal. 2015) (citing 42 U.S.C. § 12112(9)(B)); *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 96 (2d Cir. 2015); *U.S. E.E.O.C. v. Creative Networks, LLC*, 912 F.Supp.2d 828, 832-33, 838 (D. Ariz. 2012) (employer failed to accommodate Deaf applicant as a matter of law where it denied her request for ASL interpreter for mandatory training and instructed her to secure her own); *Searls v. Johns Hopkins Hospital*, 158 F.Supp.3d 427, 437 (D. Maryland 2016) (deaf nurse's request for a full-time ASL interpreter to perform duties was reasonable). [4] Defendants failed to provide ASL interpretation, or any other effective accommodation, at numerous mandatory safety meetings [5] attended by Deaf employees from 2016 to 2022. (CSF, ¶30). Defendants arranged for ASL interpretation at their November 2022 safety meeting at a cost of $178 for two

---

[4]     EEOC guidance instructs that reasonable accommodations for employees with hearing disabilities include measures to provide "equal access to information communicated in the workplace" and "the opportunity to participate in employer sponsored events" such as trainings and meetings. *See* EEOC Guidance: Hearing Disabilities in the Workplace and the Americans with Disabilities Act (January 24, 2023) ("Hearing Disabilities in the Workplace Guidance"), at Question 15 (available at http://www.eeoc.gov/facts/deafness.html). Where a Deaf employee has requested a sign interpreter for meetings, providing notes to the deaf worker instead is not an effective alternative accommodation: it "would not allow the deaf employee to ask questions and participate in discussions…as other employees do." *See* Hearing Disabilities in the Workplace Guidance at Example 20.

[5]     To date, Defendants cannot definitively provide the number of meetings they held during this time period. For example, the meeting on November 7, 2019, was not listed in the Interrogatory response, but Defendants provided other discovery confirming the existence of this meeting.

hours—an expense Defendants admit is not outsize relative to their budget. (CSF, ¶¶31-32); *see also* ECF No. 145 (Joint Stip.) ¶ 7.

Defendants failed to explore reasonable accommodations with the Deaf employees, even after learning that handwritten notes at safety meetings were ineffective. Defendants cannot show that effective reasonable accommodations, such as VRI or live ASL interpretation, were not possible—they never bothered to check. *See Snapp*, 889 F.3d at 1095; *Barnett*, 228 F.3d at 1116; *see*, *e.g.*, *Dolgencorp*, 899 F.3d at 434-35 (where employer failed to engage in interactive process to explore accommodations, employer's post-hoc "accommodate-thyself" theories of alternative modifications were meritless).

### 3. Deaf Employees' Participation at Mandatory Meetings Is a Benefit and Privilege of Employment.

Under the ADA, Defendants are obligated to provide reasonable accommodations that permit disabled employees to enjoy equal benefits and privileges of employment compared to their non-disabled counterparts. *UPS Supply Chain Solutions*, 620 F. 3d at 1110 (citing 29 C.F.R. § 1630.2(o)(1)(iii)). Effective accommodations to ensure Deaf employees' understanding and participation at Defendants' safety meetings are required.

It is undisputed that Defendants' mandatory meetings convey critical information NAVFAC requires them to provide. (CSF, ¶¶13, 16); *see* ECF No. 1 (Compl.), ¶ 37(e); ECF No. 9 (Answer), ¶ 16. The trainings caution employees not

to mix chemicals, as they may be flammable. Ex. 19 (Oct. 25, 2019 training) at ORI-514; Ex. 22 (July 20, 2018 training) at EEOC-144; *see also* 29 C.F.R. §§ 1910.1200(b)(1) & 1910.1200(h)(1) (chemical safety training required under federal workplace safety regulations). The trainings admonish employees to observe safety rules, and protect their own and others' safety. Ex. 22 (July 20, 2018 training) at EEOC-149, 152; *see UPS Supply Solutions*, 620 F. 3d at 1110 (Deaf worker's comprehension of and participation in mandatory meetings are benefits and privileges of employment); *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 755, 761 (11th Cir. 2023) (same); *U.S. E.E.O.C. v. Fed. Express Corp.,* 513 F.3d 360 (4th Cir. 2008) (employer violated ADA where it failed to provide accommodations that would enable Deaf employee to understand what was happening at employee meetings).

Equal access to the information Defendants communicated during meetings, and the ability to participate in these meetings, are benefits and privileges of employment. Without effective accommodations, the Deaf employees could not understand the critical information, ask questions, or offer ideas. (CSF, ¶42). Sitting in the meetings without effective accommodations to participate, Prak felt like Defendants thought he was "stupid." He elaborated, "I need to know what they're saying. I need to know about these things in the workplace. Why am I sitting over here…twiddling my thumbs, not participating in the meeting?" Ex. 11 (Prak Dep.)

at 74:9-75:11. The lack of effective accommodations jeopardized the Deaf employees' workplace safety. Further, it sent the Deaf employees the message that Defendants do not value or respect their service—that they should feel lucky just to work there.

## V.    **CONCLUSION**

The undisputed evidence demonstrates Defendants were on notice that Deaf employees sought reasonable accommodations for mandatory meetings. Defendants' President and CEO believes, to this day, that the Deaf employees do not need interpreters because "toilets don't talk." The undisputed facts demonstrate that Defendants failed to engage in a good-faith interactive process. In adherence with their "Bring Your Own" accommodation policy, Defendants pursued the modification most convenient to them—passing handwritten snippets to Deaf employees during meetings. Defendants continued to offer only handwritten notes as even after Charging Parties made clear they were ineffective. The undisputed evidence shows Defendants' failure to accommodate the Deaf employees deprived them the opportunity to understand and participate in safety meetings—a benefit and privilege of employment.

In light of the above, the EEOC respectfully requests that this Court grant summary judgment finding that Defendants discriminated against a class of Deaf

employees by failing to engage in the interactive process and denying them reasonable accommodations, in violation of the ADA.

## CERTIFICATION REQUIREMENT UNDER LR 7.4(e)

This motion contains a word count of 6,040 words as computed by Microsoft Word.

Dated: September 5, 2023                    Respectfully Submitted,
                                            /s/ *Eric Yau*
                                            Eric Yau
                                            Trial Attorney

                                            U.S. EQUAL EMPLOYMENT
                                            OPPORTUNITY COMMISSION